UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

SOCRATES GEORGE ANTONIOU,

                **Petitioner,**

    **- against -**

CHRISTOPHER SHANAHAN, in his
official capacity as New York Field Office
Director for U.S. Immigration and
Customs Enforcement, et al.,

             **Respondents.**

------------------------------------------------------ X

**MEMORANDUM OPINION
AND ORDER**

**15 Civ. 1985 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/4/15

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       This case is part of a recent swell of litigation challenging the

Government's interpretation of section 236(c) of the Immigration and Nationality

Act.[1]  That section provides for mandatory detention — *i.e.*, detention with no

possibility of release on bond, pending adjudication of removal — for aliens who

have committed certain crimes.[2]  Procedurally, section 236(c) instructs the

---

[1]     *See* 8 U.S.C. § 1226(c).

[2]     *See id.* § 1226(c)(1)(A)-(D) (enumerating the categories of offense
that trigger mandatory detention).

Attorney General to

> take into custody any alien who [has been convicted of a qualifying offense] *when the alien is released*, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.[3]

The italicized clause has proven a source of considerable dispute. According to the Government, the phrase "when the alien is released" authorizes mandatory detention at any point — even many years — after the completion of a criminal sentence. Thus, an alien whose underlying offense triggers mandatory detention under section 236(c) is *never* entitled to an individualized bond hearing, no matter how long Immigration and Customs Enforcement ("ICE") waits to take him into custody. Petitioner, on the other hand, construes the phrase — as do other aliens in his position — to incorporate an implicit timeliness requirement. If ICE unreasonably delays the process of taking an alien into custody, he should be entitled to a bond hearing — even if he would otherwise be subject to mandatory detention.[4]

---

[3]    *Id.* § 1226(c)(1) (emphasis added).

[4]    Judges in this District have split on the meaning of section 236(c). For opinions that support the Government's view, see, for example, *Straker v. Jones*, 986 F. Supp. 2d 345, 352 (S.D.N.Y. 2013); *Johnson v. Orsino*, 942 F. Supp. 2d 396 (S.D.N.Y. 2013); *Santana v. Muller*, No. 12 Civ. 430, 2012 WL 951768 (S.D.N.Y. Mar. 21, 2012). For opinions that favor petitioner's view, see, for example, *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533 (S.D.N.Y. 2014);

For the reasons set forth in *Martinez-Done v. McConnell*[5] — an Opinion issued by this Court on October 8, 2014, addressing the same question — I agree with petitioner.  Here, as in *Martinez-Done*, the Government relies on two arguments in favor of its interpretation of section 236(c).  *First*, the Government argues that the BIA has addressed this issue, and its conclusions merit *Chevron* deference.  *Second*, the Government argues that under the ordinary principles of statutory construction, its interpretation should prevail.

For the reasons set forth in *Martinez-Done*, both arguments fail.  The *Chevron* argument fails because, in fact, the BIA has *not* spoken to the issue at hand.  In *Matter of Rojas*[6] — the BIA decision on which the Government relies — the BIA rejected an alien's claim that because ICE waited two days after his release from prison to take him into immigration custody, its authority to impose mandatory detention under 236(c) had lapsed.[7]  In so holding, the BIA had no occasion to decide if there is an outer limit on how long the Government may wait, after an alien's release from criminal custody, before subjecting him to mandatory

---

*Louisaire v. Muller*, 758 F. Supp. 2d 229 (S.D.N.Y. 2010).

[5]      *See* 56 F. Supp. 3d 535 (S.D.N.Y. 2014).

[6]      *See* 23 I. & N. Dec. 117 (BIA 2001).

[7]      *See id.* at 124.

detention.[8]  As I explained in *Martinez-Done*, that a negligible delay fails to *exceed* this outer limit does not mean that there is no outer limit.[9]

Having disposed of the *Chevron* issue, the remaining question is whether the plain language of section 236(c) imposes a timeliness requirement. The answer is yes.  "[I]n everyday English, 'when' [] connotes immediacy."[10] Typically, "when" means "at the time that."  But even in settings where "when" means something slightly different — even where it means, for example, "during the time that," or "at any time [] that"[11] — one thing it *never* means is "any time after."  Tellingly, the Government has not cited a single use of "when," in common parlance, that conveys the meaning it urges the Court to adopt here.  Accordingly,

---

[8]      *Martinez-Done* is not the only case from this District to hold that *Matter of Rojas* does not merit *Chevron* deference.  *See Rodriguez v. Shanahan*, No. 14 Civ. 9838, 2015 WL 405633, at *4 (Jan. 30, 2015) (holding that *Rojas* does not extend as far as the Government suggests); *Figueroa v. Aviles*, 14 Civ. 9360, 2015 WL 464168, at *3-*4 (Jan. 29, 2015) (following the reasoning in *Martinez-Done*).  *Cf. Araujo-Cortes*, 35 F. Supp. 3d at 540-41 (holding that no *Chevron* analysis warranted, because section 236(c) is unambiguous, rendering the BIA's view irrelevant); *Louisaire*, 758 F. Supp. 2d at 234-236 (S.D.N.Y. 2010) (noting that many judges in this District "that have examined [section 236(c)] . . . have held that the [] statute is unambiguous on this point").

[9]      For a fuller version of this argument, see *Martinez-Done*, 56 F. Supp. 3d at 544-46.

[10]     *Id.* at 545 (internal citations omitted).

[11]     *Hosh v. Lucero*, 680 F.3d 375, 379-80 (4th Cir. 2012).  For an elaboration of this textual argument, see *Martinez-Done*, 56 F. Supp. 3d at 545-46.

its interpretation must be rejected.[12]

In short, the legal framework set out in *Martinez-Done* applies in equal measure here.[13]  Under the plain language of section 236(c), the onset of mandatory detention may not be unreasonably delayed.  If it is, the alien in question has the right to an individualized bond hearing to determine whether he may be released during the pendency of removal proceedings.[14]

## II.   ANTONIOU'S PETITION[15]

---

[12]      In addition to its linguistic shortcomings, the Government's position suffers a host of other problems — *e.g.*, raising concerns about constitutional avoidance, and conflicting with the principle that "ambiguities in deportation statutes" should be construed "in favor of [] alien[s]."  *INS v. Cardoza–Fonseca*, 480 U.S. 421, 449 (1987).  *See also Martinez-Done*, 56 F. Supp. 3d at 545-46.

[13]      Indeed, the only significant intervening event since *Martinez-Done* is the Tenth Circuit's decision in *Olmos v. Holder*, which agreed with the Third and Fourth Circuits that *Matter of Rojas* deserves *Chevron* deference.  *See Olmos v. Holder*, 780 F.3d 1313, 1322-24 (10th Cir. 2015).  The Tenth Circuit's decisions are not binding on this Court, and for reasons already explained, I do *not* believe that *Matter of Rojas* merits *Chevron* deference.  The reasoning of *Martinez-Done* survives *Olmos* unscathed.

[14]      *See* 8 U.S.C. § 1226(a)(2) (outlining the procedures for bond hearings in the removal context).

[15]      This Court has jurisdiction to entertain Antoniou's petition, as with all section 236(c) challenges, under 28 U.S.C. §§ 1331 and 2241, and ultimately under Article I, § 9 of the U.S. Constitution.  *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003) (clarifying that although section 236(e) of the INA precludes review of the Attorney General's "discretionary judgment," it does not preclude review of habeas petitions).  *See also Louisaire*, 758 F. Supp. 2d at 234.

Keeping that background in mind, the sole difference between *Martinez-Done* and the instant case is the length of the delay.  In *Martinez-Done*, the delay was nearly a decade — a lapse of time that was plainly unreasonable.  Here, by contrast, the delay was roughly two years.  On December 17, 2012, Antoniou entered a guilty plea to conspiracy to commit bank fraud.[16]  On June 10, 2013, he was sentenced to time served — one day — plus three years of supervised release and restitution.[17]  On January 15, 2015, slightly more than two years afer his release from criminal custody, ICE arrested Antoniou,[18] serving him with a Notice to Appear.[19]  ICE determined that under section 236(c), mandatory detention was appropriate in light of Antoniou's 2012 offense.[20]  He has been detained ever since.[21]

## III.   DISCUSSION

---

[16]     *See* Petition for Writ of Habeas Corpus ("Pet."), at 9; Criminal Judgment, Exhibit ("Ex.") 2 to Return to Habeas Petition ("Ret.").

[17]     *See*   Respondents' Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus ("Opp. Mem."), at 5; Criminal Judgment at 2-5.

[18]     *See* Notice of Address, Ex. 6 to Pet.

[19]     *See* Notice to Appear, Ex. 4 to Ret.

[20]     *See id.* at 3 (indicating that Antoniou's 2012 conviction was for an aggravated offense that triggers mandatory detention).  *See also* Notice of Custody Determination, Ex. 5 to Ret.

[21]     *See* Pet. at 9.

According to the Government, the length of the delay distinguishes the instant case from *Martinez-Done*.  There, as the Government notes, my reasoning "left open the possibility that a delay of much less than ten years may be reasonable, even where ICE did not detain the alien *immediately* upon his release from criminal custody."[22]  In the Government's view, this is such a case.  It argues that "ICE's authority did not evaporate by virtue of it not immediately finding and apprehending Antoniou," because he was detained "within a reasonable amount of time after he was released [from custody]."[23]

In support of this position, the Government cites to a number of cases from this District finding unreasonable delays in the onset of mandatory detention,[24] and it emphasizes that even among *those* cases, "no[] [judge] [has] found a delay of less than three years to be unreasonable."[25]  That is true.  But the mere fact that judges in this District have not been confronted with a delay of less than three years does not automatically render shorter periods reasonable.  The

---

[22]     Opp. Mem. at 13 (emphasis in original).

[23]     *Id.*

[24]     *Id.* at 13-14.  *See, e.g.*, *Arjune v. Shanahan*, No. 15 Civ. 1551, 2015 WL 1529286, at *4-*5 (S.D.N.Y. Apr. 7, 2015) (holding that four and a half years is an unreasonable delay).

[25]     Opp. Mem. at 13.

reality is that district courts — including this Court — have been able to comfortably dispose of cases involving drastic delay, because they are so *patently* unreasonable, without developing a framework to draw sharp lines.  With respect to the latter, guidance from the Second Circuit is needed.  And it may soon be forthcoming — *Lora v. Shanahan*, a case presenting the same section 236(c) issue as the instant case, is fully submitted and was argued less than two months ago.[26]

        In the meantime, I conclude that a two-year delay is still too long. The trouble with the Government's position is that beyond invoking abstract concerns about "resource[]" limitations and "lapses in communication" between ICE and local authorities, it has offered no concrete explanation at to *why* it took so long to initiate mandatory detention.  Such an explanation may exist, but without it being presented, it is unclear what interests the Court should balance, much less what is the proper balance to strike.

        Without purporting to resolve the line-drawing problem at the heart of section 236(c), it is worth noting that in two related settings, the Supreme Court has expressed support for a "six-month rule."  *First*, when an alien has been deemed removable, but his physical removal from the United States is delayed for administrative reasons, the Court has held that continued detention is

---

[26]    *See* 15 F. Supp. 3d 478 (S.D.N.Y. 2014).

presumptively reasonable for six months — after which point it begins to raise Due Process concerns.[27]  *Second*, in the context of section 236(c), the Court observed that mandatory detention typically lasts between "a month and a half in the vast majority of cases," and "five [or six] months in the minority of cases in which the alien chooses to appeal"[28] — and it held section 236(c) constitutional largely on that basis.[29]

Although these are constitutional holdings, they provide helpful analogies to the statutory issue here.  In both *Zadvydas* and *Demore*, the Supreme Court's aim was to give ICE enough latitude to effectively administer the immigration laws, while also ensuring that the length of detention would not violate an alien's rights.  Section 236(c) gives rise to the same tension.  Although the harm associated with *delayed* detention is certainly less severe than the harm of *prolonged* detention, the Government's interest here is also considerably less

---

[27]    *See Zadvydas v. Davis*, 533 U.S. 678, 700-01 (2001).

[28]    *Demore*, 538 U.S. at 530.

[29]    The importance of the duration was particularly apparent in Justice Kennedy's concurrence, which suggested that if the length of "continued detention became unreasonable or unjustified," then "a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness" — *i.e.*, that section 236(c) would no longer be constitutional as applied.  *Id.* at 532 (Kennedy, J., concurring).  *Accord* Hon. Karen Nelson Moore, *Aliens and the Constitution*, 88 N.Y.U. L. REV. 801, 860-01 (2013) (analyzing the Supreme Court's reasoning in *Demore*).

pressing.  To hold that section 236(c) is inapplicable to an alien like Antoniou does not interfere, in any way, with his removal proceedings.  Nor does it require that he be released during their pendency.  All it requires is that an impartial adjudicator decide, the same way that judges presiding over criminal arraignments decide on a daily basis, if Antoniou *should* be released.  To the extent that this conclusion causes ICE hardship, it is a hardship that ICE must endure — at least until the Government can explain, in greater detail, why requiring ICE to initiate custody within two years of an alien's release from criminal confinement would unduly hamper the enforcement of the immigration laws.

## IV.   CONCLUSION

For the foregoing reasons, Antoniou was not taken into immigration custody "when [he was] released" from criminal custody,[30] making mandatory detention improper.  He has the right — pursuant to section 236(a) of the INA — to have an impartial adjudicator decide if he may be released during the pendency of his removal proceedings.  Accordingly, the Government is ordered to afford Antoniou a bond hearing within fifteen (15) days.  The Clerk of the Court is directed to close this case.

SO ORDERED:

---

[30]     8 U.S.C. § 1226(c)(1).

-10-

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              June 4, 2015

**-Appearances-**

**For Petitioner:**

Christopher J. Cassar, Esq.
Christopher J. Cassar, P.C.
13 East Carver St.
Huntington, NY 11743
(631) 271-6596

**For Respondents:**

Brandon M. Waterman
Assistant U.S. Attorney
Southern District of New York
86 Chambers Street
New York, NY 10007
(212) 637-2711